Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VIII

| | | |
|---|---|---|
| ADRIÁN FERNANDO LUGO QUINTERO Y SAN ARCÁNGEL PHARMACY, INC.<br><br>Apelantes<br><br>v.<br><br>JAVIER LUGO QUINTERO, JORGE LUIS LUGO QUINTERO, MARÍA LISETTE LUGO QUINTERO, ROBERTO HERNÁNDEZ CLAUDIO, SÁNCHEZ SECURITY GROUP LLC, JOHN DOE, JANE DOE, LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTA POR JOHN DOE Y JANE DOE<br><br>Apelados | TA2025AP00523 | APELACIÓN Procedente del Tribunal de Primera Instancia, Sala Superior de Caguas<br><br>Caso Núm.: CG2025CV02770 (702)<br><br>Sobre:<br>*Injunction* |

Panel integrado por su presidenta, la jueza Lebrón Nieves, el juez Pagán Ocasio y la jueza Álvarez Esnard.

Álvarez Esnard, jueza ponente

## SENTENCIA

En San Juan, Puerto Rico, a 23 de enero de 2026.

Comparece ante nos el señor Adrián Fernando Lugo Quintero y San Arcángel Pharmacy, Inc., (en conjunto, "los Apelantes"), mediante *Apelación* presentada el 7 de noviembre de 2025. Nos solicita la revocación de la *Sentencia* emitida y notificada el 9 de noviembre de 2025 por el Tribunal de Primera Instancia, Sala Superior de Caguas ("foro primario" o "tribunal *a quo*"). Por virtud del aludido dictamen, el foro primario declaró *No Ha Lugar* una causa de acción sobre *injunction* radicada por los Apelantes contra el señor Javier Lugo Quintero, el señor Jorge Luis

Lugo Quintero, la señora María Lisette Lugo Quintero, el señor Roberto Hernández Claudio y Sánchez Security Group, LLC ("Sánchez Security") (en conjunto, "la parte apelada").

Por los fundamentos que expondremos a continuación, **confirmamos** la sentencia apelada.

**I.**

El 12 de agosto de 2025, los Apelantes presentaron *Demanda* sobre interdicto preliminar y permanente contra la parte apelada.[1] Por virtud del referido escrito, alegaron que en 1979 se creó San Arcángel Pharmacy Inc., una corporación que emitió diez mil (10,000) acciones, de las cuales siete mil (7,000) son comunes y (3,000) tres mil son preferentes. Adujeron que la señora Lilliam Quintero Echevarría ("señora Quintero Echevarría" o "la causante"), adquirió cuatrocientas ochenta y cinco (485) acciones comunes de la referida corporación mediante compraventa. No obstante, aludieron que la señora Quintero Echevarría falleció el 25 de enero de 2021. Como corolario de lo anterior, esbozaron que, al momento de la radicación de la demanda, las acciones adquiridas por la causante siguen estando a nombre de ésta.

Cónsono con lo antes expuesto, los Apelantes arguyeron lo siguiente:

9. El 1 de agosto de 2025, en total menosprecio con la Ley de Corporaciones de Puerto Rico vigente y los estatutos corporativos, los co-demandados, Javier Lugo Quintero, Jorge Luis Lugo Quintero, María Lisette Lugo Quintero y Roberto Hernández Claudio, convocaron una reunión extraordinaria a través de la plataforma de Zoom. Ningún accionista autorizó, ni participó en dicha reunión, toda vez que todas las acciones distribuidas al momento están a nombre de la señora Lilliam Quintero Echevarría, fallecida.

10. En la referida reunión, los participantes no le permitieron al demandante, Adrián Lugo Quintero, presidente y administrador de la corporación, participar de la misma. Los co-demandados, Javier Lugo Quintero, Jorge Luis Lugo Quintero, María Lisette Lugo Quintero y Roberto Hernández Claudio, tomaron la decisión (contraria en derecho) de que el demandante no continuara administrando el negocio, designando a

---

[1] Véase SUMAC TPI, Entrada Núm. 1.

> Javier J. Lugo Quintero como presidente. Los co-demandados, Javier Lugo Quintero, Jorge Luis Lugo Quintero, María Lisette Lugo Quintero se auto-nombraron accionistas de la corporación a pesar de que las acciones de la corporación pertenecientes a su única accionista, Lilliam Quintero Echevarría, no han sido adjudicadas. Las acciones de los co-demandados son contrarias a derecho. [2]

Así las cosas, los Apelantes señalaron que el 11 de agosto de 2025, el señor Adrián Lugo Quintero pretendía acudir a las inmediaciones de la corporación para asumir su cargo de presidente. Sin embargo, indicaron que ese día, "Javier Lugo Quintero, María Lisette Lugo Quintero y Roberto Hernández Claudio se personaron a la oficina designada de la corporación en conjunto con empleados armados de la co-demandada, Sánchez Security Group, LLC" y estos rompieron candados y tomaron posesión de las operaciones de la corporación "intimidando al co-demandante y los empleados de la corporación".[3]

Ante este cuadro, a tenor con la Regla 57 de Procedimiento Civil, 32 LPRA Ap. V, R. 57, y los Artículos 675 y 687 del Código de Enjuiciamiento Civil, 32 LPRA secs. 3521 y 3533, los Apelantes solicitaron los siguientes remedios:

a. Emita un interdicto preliminar y permanente en contra de los codemandados para que se abstengan de realizar actos dirigidos a realizar cambios en la administración de la corporación, adjudicar y/o distribuir acciones de la corporación; tomar control y/o disponer de los activos y pasivos de la corporación, hasta tanto se adjudiquen las acciones emitidas por la corporación y que pertenecen su única accionista, Lilliam Quintero Echevarría;

b. Se designe al demandante, Adrián Lugo Quintero como Administrador Judicial de la corporación; y

c. Se ordene a la corporación co-demandada Sánchez Security Group LLC a retirar sus empleados de las oficinas corporativas y/o cualquiera de las propiedades pertenecientes a la corporación y al pago de los daños realizados por estos en las propiedades de la corporación.[4]

Por su parte, el 26 de agosto de 2025, el señor Javier Lugo Quintero, el señor Jorge Luis Lugo Quintero, la señora María Lissette Lugo Quintero y el señor Roberto Hernández Claudio

---

[2] Véase SUMAC TPI, Entrada Núm. 1, págs. 3-4.
[3] Véase SUMAC TPI, Entrada Núm. 1, pág. 4.
[4] Véase SUMAC TPI, Entrada Núm. 1, págs. 6-7.

presentaron *Moción de Desestimación de Demanda de Injunction.*[5] Mediante esta, argumentaron que la causa acción instada por los Apelantes, no logró demostrar cual era el daño irreparable sufrido, el cual es un elemento indispensable para la expedición de un *injunction*. Además, sostuvieron que, en la presente controversia, existe un remedio adecuado en ley. Sobre esto, abundaron que la "la controversia es esencialmente sucesoria y corporativa, susceptible de resolverse mediante un pleito de partición hereditaria, una acción corporativa o ambas".[6]

Así pues, aclararon que, el 11 de agosto de 2025, Adrián Fernando Lugo Quintero, presentó *Demanda de Liquidación de Bienes Hereditarios* en el caso CG2025CV02749 contra el señor Javier Lugo Quintero, el señor Jorge Luis Lugo Quintero, la señora María Lissette Lugo Quintero y el señor Roberto Hernández Claudio, éste último compañero consensual de la señora Quintero Echevarría. En vista de lo anterior, razonaron que los Apelantes cuentan con un remedio ordinario y eficaz en derecho, a saber, la acción de liquidación y partición de bienes hereditarios, los cuales atienden de manera íntegra las controversias planteadas en el pleito de *injunction* presentado. Por consiguiente, enfatizaron que no procedía la causa de acción instada en el caso de epígrafe, por lo que solicitaron su desestimación.

Por su parte, el 9 de septiembre de 2025, los Apelantes radicaron *Moción en Oposición a Solicitud de Desestimación.*[7] Por virtud de este escrito, esgrimieron que, en efecto, el recurso de *injunction* que presentaron procede. Al respecto, subrayaron que en la presente controversia, se cumplen esencialmente con todos los requisitos del *injunction* preliminar y permanente. En particular, abundaron sobre la naturaleza del daño sufrido y puntualizaron

---

[5] Véase SUMAC TPI, Entrada Núm. 23.
[6] Véase SUMAC TPI, Entrada Núm. 23, pág. 4.
[7] Véase SUMAC TPI, Entrada Núm. 32.

que el asunto hereditario que se alega en la moción de desestimación no guarda relación con la violación relacionada a la administración de la corporación.

Por su parte, el 9 de septiembre de 2025, Sánchez Security presentó *Moción de Desestimacion* [sic], en la cual esencialmente, se unió a la solicitud desestimación instada por el señor Javier Lugo Quintero, el señor Jorge Luis Lugo Quintero, la señora María Lissette Lugo Quintero y el señor Roberto Hernández Claudio.[8] Evaluados los escritos ante su consideración, el 9 de octubre de 2025, el foro primario dictó y notificó *Sentencia*.[9] Al amparo de este dictamen, el tribunal *a quo* determinó lo siguiente:

1. La parte demandante dispone de un remedio adecuado y eficaz en ley a través del procedimiento ordinario de liquidación y partición de bienes hereditarios (caso CG205CV02749).
2. No se ha demostrado la existencia de daño irreparable que justifique la expedición de un injunction.
3. La solicitud interdictal constituye un intento improcedente de sustituir los mecanismos ordinarios de protección patrimonial previstos en el Código Civil de 2020 y en las Reglas de Procedimiento Civil.[10]

A tono con lo anterior, el foro primario denegó la solicitud de *injunction* preliminar y permanente y desestimó en su totalidad la demanda del caso de epígrafe. Posteriormente, el 9 de octubre de 2025, el señor Javier Lugo Quintero, el señor Jorge Luis Lugo Quintero, la señora María Lisette Lugo Quintero y el señor Roberto Hernández Claudio presentaron *Mocion* [sic] *Solicitando Imposicion* [sic] *de Honorarios Gastos y Costas de Procedimiento y Regla 44.1 de Procedimiento Civil*, mediante la cual solicitaron el pago de tres mil noventa dólares ($3,090.00) en concepto de costas y honorarios de abogado. [11] Dicha solicitud fue declarada *Ha Lugar* mediante *Resolución* emitida el 15 de octubre de 2025.[12] De otro lado, el 17 de octubre de 2025, Sánchez Security presentó *Moción Sobre*

---

[8] Véase SUMAC TPI, Entrada Núm. 36.
[9] Véase SUMAC TPI, Entrada Núm. 52.
[10] Véase SUMAC TPI, Entrada Núm. 52, págs. 3-4.
[11] Véase SUMAC TPI, Entrada Núm. 53.
[12] Véase SUMAC TPI, Entrada Núm. 54.

*Imposicion* [sic] *de Costas y Honorarios de Abogados* en la que solicitó el pago de dos mil quinientos noventa dólares ($2,590.00) en concepto de honorarios de abogado,[13] la cual fue concedida mediante *Resolución* emitida ese mismo día.[14]

Inconforme con estos dictámenes, el 7 de noviembre de 2025, los Apelantes instaron el recurso de epígrafe y formularon los siguientes señalamientos de error:

> PRIMER SEÑALAMIENTO DE ERROR: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DESESTIMAR EN SU TOTALIDAD LA DEMANDA DE INJUNCTION, INCURRIENDO EN PREJUICIO, PARCIALIDAD Y ERROR MANIFIESTO.
>
> SEGUNDO SEÑALAMIENTO DE ERROR: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL CONDENAR A LOS DEMANDANTES-APELANTES AL PAGO DE $3,090.00 POR CONCEPTO DE COSTAS, GASTOS Y HONORARIOS DE ABOGADO, ABUSANDO DE SU DISCRECIÓN.
>
> TERCER SEÑALAMIENTO DE ERROR: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL CONDENAR A LOS DEMANDANTES-APELANTES AL PAGO DE $2,590.00 POR CONCEPTO DE COSTAS, GASTOS Y HONORARIOS DE ABOGADO, ABUSANDO DE SU DISCRECIÓN.

Empero, el 7 de noviembre de 2025, el señor Javier Lugo Quintero, el señor Jorge Luis Lugo Quintero, la señora María Lisette Lugo Quintero y el señor Roberto Hernández Claudio presentaron *Urgente Moción de Renuncia a Representación Legal*, la cual fue declarada *Ha Lugar* por esta Curia. En consecuencia, se le concedió a esta parte hasta el 1 de diciembre de 2025 para anunciar nueva representación legal y un término de veinte (20) días contados a partir de la presentación de la nueva representación legal para radicar su alegato en oposición.

Oportunamente, el 1 de diciembre de 2025 el señor Javier Lugo Quintero, el señor Jorge Luis Lugo Quintero, la señora María Lissette Lugo Quintero y el señor Roberto Hernández Claudio presentaron *Moción Asumiendo Representación Legal*, la cual fue

---

[13] Véase SUMAC TPI, Entrada Núm. 56.
[14] Véase SUMAC TPI, Entrada Núm. 57.

declarada *Ha Lugar* por esta Curia mediante *Resolución* emitida el 2 de diciembre de 2025.

Por su parte, el 8 de diciembre de 2025, Sánchez Security compareció mediante *Oposición de Apelación de Sentencia del 9 de Octubre de 2025.*

Con el beneficio de los escritos de las partes comparecientes, procedemos a exponer la normativa jurídica aplicable al caso ante nuestra consideración.

## II.

### A. *Desestimación al amparo de la Regla 10.2(5) de Procedimiento Civil*

En nuestro esquema procesal, la Regla 10.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2, permite a la parte demandada solicitar la desestimación de la acción legal antes de contestarla "cuando es evidente de las alegaciones de la demanda que alguna de las defensas afirmativas prosperará". *Inmob. Baleares et al. v. Benabe et al.* 214 DPR 1109, 1128 (2024) citando a *Conde Cruz v. Resto Rodríguez et al.*, 205 DPR 1043, 1065 (2020). La precitada regla fija los siguientes fundamentos para solicitar la desestimación: (1) falta de jurisdicción sobre la materia; (2) falta de jurisdicción sobre la persona; (3) insuficiencia del emplazamiento; (4) insuficiencia del diligenciamiento del emplazamiento; **(5) dejar de exponer una reclamación que justifique la concesión de un remedio;** y (6) dejar de acumular una parte indispensable. 32 LPRA Ap. V, R. 10.2. (Énfasis nuestro).

En lo pertinente, el inciso (5) de la Regla 10.2 de Procedimiento Civil, *supra,* permite la desestimación de una demanda bajo el fundamento de que no expone una reclamación que justifique la concesión de un remedio. En este contexto, los tribunales están obligados a tomar como ciertos todos los hechos bien alegados en la demanda que hayan sido aseverados de

manera clara y concluyente y, a su vez, considerarlos de la forma más favorables a la parte demandante. *BPPR v. Cable Media,* 215 DPR___ (2025) 2025 TSPR 1, pág. 11.

No obstante, para que prevalezca una moción de desestimación al amparo de la Regla 10.2 (5) de Procedimiento Civil, *supra,* esta debe establecer "con toda certeza que la parte demandante no tiene derecho a remedio alguno bajo cualquier estado de derecho que pueda ser probado en apoyo a su reclamación, aun interpretando la demanda de la forma más liberal posible a su favor" (citas omitidas). *Díaz Vázquez et al. v. Colón Peña et al.,* 214 DPR 1135, 1150 (2024).  Por ello, el Tribunal Supremo de Puerto Rico ha explicado que "una demanda no debe ser desestimada a menos que la razón para solicitar el remedio no proceda bajo el supuesto de derecho alguno, ni pueda ser enmendada para subsanar cualquier posible deficiencia". *Íd.*

### B. Injunction

El recurso de *injunction* se rige en parte por la Regla 57 de Procedimiento Civil, 32 LPRA Ap. V, R. 57, y por el *Código de Enjuiciamiento Civil de Puerto Rico* de 1933, 32 LPRA 3421, *et seq.* Este último define el recurso de *injunction* como sigue:

> El *injunction* es un mandamiento judicial expedido por escrito, bajo el sello de un tribunal, por el que se requiere a una persona para que se abstenga de hacer, o de permitir que se haga por otras bajo su intervención, determinada cosa que infrinja o perjudique el derecho de otra. 32 LPRA sec. 3421.

Este recurso extraordinario pretende "prohibir u ordenar la ejecución de un acto, para evitar que se causen perjuicios inminentes o daños irreparables a alguna persona, cuando no hay otro remedio en ley adecuado." *Mun. Fajardo v. Srio. Justicia et al.,* 187 DPR 245, 255 (2012).

> Para determinar si procede el recurso extraordinario de *injunction* hay que detectar si la acción connota o no un agravio de patente intensidad al derecho del individuo que reclame una reparación urgente. Constituye, por lo tanto, un daño irreparable aquel que no puede ser satisfecho

adecuadamente mediante la utilización de los remedios legales disponibles. De ahí que la parte promovente deberá demostrar que de éste no concederse, sufriría un daño irreparable. *VDE Corporation v. F & R Contractors*, 180 DPR 21, 40 (2010).

A los efectos de establecer un daño irreparable, un *injunction* procede "cuando una compensación pecuniaria no habría de proporcionar un remedio adecuado". R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho procesal civil,* 6ta ed., San Juan, 2017, sec. 5705, pág. 591. El *injunction* es "un remedio altamente discrecional" que debe "expedirse con cautela y solamente cuando el caso es claro". *Íd.*

En sintonía con lo anterior, la Regla 57.3 de Procedimiento Civil, *supra,* enumera ciertos criterios que ha de cumplirse para que se pueda expedir un *injunction* preliminar:

> Al decidir si expide una orden de entredicho provisional o injunction preliminar, el tribunal deberá considerar, entre otros, los siguientes:
>
> (a) La naturaleza del daño a que está expuesto la parte peticionaria;
>
> (b) la irreparabilidad del daño o la inexistencia de un remedio adecuado en ley;
>
> (c) la probabilidad de que la parte promovente prevalezca;
>
> (d) la probabilidad de que la causa se torne en académica;
>
> (e) el impacto sobre el interés público del remedio que se solicita, y
>
> (f) la diligencia y la buena fe con que ha obrado la parte peticionaria. 32 LPRA Ap. V R. 57.3

### C. *Memorando de Costas*

En nuestra jurisdicción, se reconoce la concesión de costas a la parte cuyo favor se resuelva un pleito, las cuales serán otorgadas conforme lo regula la Regla 44.1 de Procedimiento Civil, 32 LPRA Ap. V. R. 44.1. Véase, *PR Fast Ferries et al. v. AAPP*, 213 DPR 103, 115-116 (2023). Así pues, nuestro ordenamiento jurídico contempla como costas aquellos gastos necesarios, incurridos y razonables. *Íd.* pág. 116.

Por otro lado, la Regla 44.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 44.1, establece expresamente lo siguiente:

> (a) *Su concesión.* — Las costas le serán concedidas a la parte a cuyo favor se resuelva el pleito o se dicte sentencia en apelación o revisión, excepto en aquellos casos en que se disponga lo contrario por ley o por estas reglas. Las costas que podrá conceder el tribunal son los gastos incurridos necesariamente en la tramitación de un pleito o procedimiento que la ley ordena o que el tribunal, en su discreción, estima que una parte litigante debe reembolsar a otra.

Dado que el lenguaje antes transcrito reconoce el derecho de la parte prevaleciente a recobrar las costas razonables y necesarias en las que incurrió durante el litigio, "una vez reclama su pago, la imposición de costas a la parte perdidosa es mandatoria". *ELA v. Ojo de Agua Development*, 205 DPR 502, 528 (2020).

A esos efectos, la Regla 44.1(b) de Procedimiento Civil de 2009, *supra*, provee a la parte prevaleciente un término de diez (10) días, contados a partir de la notificación de la sentencia, para que presente y notifique a las demás partes un memorando de costas, el cual debe estar juramentado o certificado por su representante legal, con todas las partidas de gastos y desembolsos incurridos que a su entender son correctas y fueron necesarias para la tramitación del pleito.

Además de lo anterior, la Regla 44.1 de Procedimiento Civil, *supra*, establece que, cualquier parte que no esté conforme con las costas reclamadas, dispondrá de un término de diez (10) días, contados a partir de la notificación del memorando de costas, para presentar su escrito en oposición. Véase, Regla 44.1(b) de Procedimiento Civil, *supra*. Los términos dispuestos en esta regla son de naturaleza jurisdiccional, por lo que el foro primario carece de facultad para extenderlos. *ELA v. El Ojo de Agua Development, supra*.

**III.**

En la presente controversia, los Apelantes nos solicitan la revocación de la *Sentencia* emitida y notificada por el foro primario el 9 de octubre de 2025. Esgrimen como, primer señalamiento de error, que el tribunal *a quo* incurrió en prejuicio, parcialidad y error manifiesto al desestimar en su totalidad la demanda de *injunction*. Asimismo, como segundo y tercer error, los Apelantes alegan que el foro primario incidió al condenarlos a pagar costas, gastos y honorarios de abogado a la parte apelada. Veamos.

Por estar íntimamente relacionados entre sí, atenderemos los tres (3) señalamientos de error formulados de forma conjunta. Surge del expediente que los Apelantes radicaron una demanda de *injunction* preliminar y permanente con el fin de que la parte apelada se abstuvieran de realizar "actos dirigidos a realizar **cambios en la administración de la corporación, adjudicar** y/o **distribuir acciones de la corporación**; **tomar control** y/o disponer de los activos y pasivos de la corporación, **hasta tanto se adjudiquen las acciones emitidas por la corporación** y que **pertenecen su única accionista, Lilliam Quintero Echevarría**" (Énfasis nuestro).[15]

Es harto sabido que, en nuestro ordenamiento jurídico, "la naturaleza del injunction es su necesidad como medio para prevenir perjuicios inminentes o daños irreparables". *Buxó Santiago v. ELA et als.*, 215 DPR___ (2024) 2024 TSPR 130, pág. 16. Como corolario de lo anterior, "la concesión de este remedio presume la inexistencia de un remedio adecuado en ley". *Íd.*

Sin embargo, vale destacar que el coapelante en este caso, el señor Adrián Lugo Quintero, presentó *Demanda de Liquidación de Bienes Hereditarios* en el caso CG2025CV02749 contra el señor Javier Lugo Quintero, el señor Jorge Luis Lugo Quintero, la señora

---

[15] Véase SUMAC TPI, Entrada Núm. 1, pág. 6.

María Lissette Lugo Quintero y el señor Roberto Hernández Claudio, partes que también figuran como demandados en el pleito del *injunction*.

Dicha causa de acción en el caso CG2025CV02749 versa sobre la liquidación de los bienes hereditarios de la señora Oquendo Echevarría. Consta en la referida demanda que, entre el caudal hereditario de la causante, se encuentra el "**[c]ien por ciento de las acciones de la corporación San Arcángel Pharmacy, Inc.**" (Énfasis Nuestro).[16] En vista de lo anterior, el señor Adrián Lugo Quintero solicitó los siguientes remedios en el pleito de liquidación de bienes hereditarios:

a. Se designe al demandante [Adrián Lugo Quintero] como Administrador Judicial de la herencia hasta su liquidación;

b. b. Se ordene el **correspondiente inventario, avalúo, pago de legado, liquidación y adjudicación de comunidad de bienes hereditarios** conforme a derecho (Énfasis nuestro).[17]

Nótese que los remedios solicitados en la referida demanda de liquidación de bienes hereditarios atienden, mediante un recurso ordinario, los reclamos planteados por los Apelantes en el caso de epígrafe. Ello pues, **la totalidad** de las acciones de la corporación San Arcángel Pharmacy, Inc., **pertenecen** al caudal hereditario la señora Oquendo Echevarría, el cual está pendiente de adjudicación. Una vez se dilucide la distribución de dichas acciones, mediante el **trámite ordinario** de la acción de liquidación de bienes hereditarios, las partes de epígrafe tendrán certeza sobre la tenencia de la corporación en cuestión.

En otras palabras, con la radicación de la demanda en el caso CG2025CV02749, los Apelantes **poseen un remedio adecuado en ley** para dilucidar los reclamos presentados en la demanda de *injunction*. De igual forma, de las alegaciones

---

[16] Véase SUMAC TPI, en el caso CG2025CV02749, Entrada Núm. 1, pág. 5.
[17] Véase SUMAC TPI, en el caso CG2025CV02749, Entrada Núm. 1, págs. 10-11.

contenidas en la petición de *injunction* tampoco se desprende la existencia de un daño irreparable, pues las actuaciones de la parte apelada pueden ser corregidas dentro del proceso instado en el caso de liquidación de bienes hereditarios.

Ante tales hechos, es forzoso concluir que la causa de acción de los Apelantes no satisface los requisitos exigidos en la Regla 57 de Procedimiento Criminal, *supra.* Con lo anterior expuesto, colegimos que es correcta la determinación del foro primario en cuanto desestimar en su totalidad la demanda de *injunction.* A tono con lo anterior, en lo que respecta a la imposición de costas y honorarios de abogados solicitadas por la parte apelada, resolvemos que estas proceden, toda vez que la causa de acción instada por los Apelantes es inmeritoria y los respectivos memorandos de derecho sometidos por la parte apelada cumplen con la Regla 44.1 de Procedimiento Civil, *supra.* Ante este cuadro, determinamos que no se cometieron ninguno de los tres (3) señalamientos de error esgrimidos por los Apelantes.

**IV.**

Por los fundamentos previamente esbozados, **confirmamos** el dictamen apelado.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones